Nicholas R. Nowicki
AZ Lic. # 029740
Ranwick & Nowicki PLLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: 612-217-0257
Email: nik@ranwicknowickilaw.com

*Attorney for Plaintiff,*
*Ericka Mendez,*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ericka Mendez,<br><br>Plaintiff,<br><br>v.<br><br>Progrexion Teleservices, Inc.,<br>A Delaware Corporation,<br><br>Defendant. | Case No.:<br><br><br><br>**COMPLAINT**<br><br><br>**JURY TRIAL DEMAND** |

Plaintiff Ericka Mendez (Hereinafter "Ericka") brings this action against Progrexion Teleservices, Inc. (Hereinafter "Defendant"), to recover compensation, lost wages, lost employment benefits, liquidated damages, actual damages, punitive damages, attorneys' fees, costs, and additional relief as the

1

court sees fit for defamation, negligence, infliction of emotional distress, wrongful termination and violations of the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"),

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

2. The transactions and occurrences which give rise to this action occurred in the City of Phoenix, Maricopa County, Arizona.

3. Venue is proper in the District of Arizona, because Defendant is located in Phoenix, Arizona and Ericka worked for Defendant in Phoenix, Arizona.

## PARTIES

4. Ericka was employed by Defendant.

5. Ericka is a resident of Glendale, Arizona which is located in Maricopa County.

6. Defendant is a Delaware corporation with its principal place of business in Salt Lake City, Utah.

7. Defendant is a telemarketing company that sells credit repair services.

8. Defendant employs roughly 1,200 employees with call centers in numerous different states.

9. Defendant maintains an office in Phoenix, Arizona.

10. Ericka worked at Defendant's office in Phoenix, Arizona.

11. At all material times, Defendant includes and included any and all parents, subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organization units of any kind, predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

12. At all material times, each of the Defendant was the agent and employee of every other Defendant in doing the events described and was at all times acting within the purpose and scope of such agency and employment and are vicariously liable under the theory of respondeat superior for the actions and inactions of their employees and contractors.

## **GENERAL ALLEGATIONS**

13. Ericka slipped and fell and suffered a head injury.

14. Ericka consulted a medical physician.

15. Ericka and her physician were concerned that she may have to miss work because of the injury.

16. Ericka consulted with Defendant.

17. Ericka's health care provider submitted the Medical Leave Certification Form, form WH-380, to Defendant so that Ericka could take leave under the FMLA.

18. Defendant acknowledged and verified that Ericka was being granted leave under the FMLA.

19. Ericka took time off under the FMLA.

20. After taking time off, Ericka received a text message stating that she had been terminated because of accrued absences.

21. Around the time Ericka was wrongfully terminated, she was assigned a new supervisor.

22. The new supervisor was aware that Ericka was on FMLA.

23. Ericka's position was in sales.

24. Ericka had a sales goal assigned to her.

25. Ericka's supervisor had a sales goal assigned to him.

26. Upon information and belief, Ericka's supervisor did not want Ericka on his team because he knew that Ericka would miss time pursuant to the FMLA which in turn had the potential to affect his ability to meet his sales goal.

27. Ericka's sales goal was not adjusted to account for the leave she needed to take under the FMLA.

28. Ericka's supervisor's sales goal was not adjusted to account for the leave that Ericka needed to take under the FMLA.

29. Following, the message that Ericka received informing her of her termination, Ericka reached out to Defendant informing them that she was on FMLA and that her absences were covered under the FMLA.

30. Defendant did not respond.

31. Defendant knew that Ericka was on FMLA prior to her being terminated.

32. Ericka filed for unemployment benefits with the Arizona Department of Economic Security.

33. The Arizona Department of Economic Security contacted Ericka and informed her that she may be denied benefits due to the Defendant's response.

34. Upon information and belief, as part of that application process, Defendant responded to Ericka's application by stating that Ericka was at fault for her termination and that Ericka was terminated for unexcused absences.

35. The Department of Economic Security did a deeper investigation and eventually granted Ericka unemployment benefits.

36. Ericka has lost wages because of Defendant's actions.

37. Ericka has suffered out of pocket losses because of Defendant's actions.

38. Ericka has suffered emotional anguish because of Defendant's actions.

39. Defendant acted with an evil mind.

## COUNT I

### VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

40. Ericka repeats and realleges each and every allegation as if fully set forth herein.

41. At all times relevant herein, Ericka was an "eligible employee" within the meaning of the FMLA.

42. At all times relevant herein, Defendant was and is a "covered employer" within the meaning of the FMLA.

43. At all times relevant herein, Ericka was a full-time employee of Defendant that worked 1,250 hours or more during the twelve months prior to the start of any leave constituting FMLA leave.

44. Ericka had worked for Defendant for at least 12 months before going on FMLA.

45. At all times relevant herein, Defendant employed fifty (50) or more employees at Ericka's location of employment and/or within seventy-five (75) miles of Ericka's location of employment.

46. Defendant's Phoenix location has employed over 50 employees for over a year.

47. By the actions described above, among others, Defendant violated the FMLA by terminating Ericka for taking leave under the FMLA.

48. By the actions described above, among others, Defendant retaliated against Ericka on the basis of her decision to exercise her rights under the FMLA.

49. As a direct and proximate result of Defendant's violations of the FMLA, Ericka has suffered, and continues to suffer, monetary and/or economic harm

for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

50. As a direct and proximate result of Defendant's violations of the FMLA, Ericka has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of compensatory damages and other relief.

51. As a direct and proximate result of Defendant's violations Ericka's requests and is entitled to but not limited to damages equal to the amount of wages and benefits lost, monetary losses, interest and liquidated damages together with appropriate declaratory and other equitable relief, together with attorneys' fees and costs, and interest.

52. Defendant's unlawful and discriminatory actions constitute reckless, intentional, malicious, willful and wanton violations of the FMLA for which Ericka is entitled to an award of liquidated damages.

## COUNT II

## DEFAMATION AND DEFAMATION *PER SE*

53. Ericka repeats and realleges each and every allegation as if fully set forth herein.

54. Ericka is not a public figure.

55. Defendant's statements to the Arizona Department of Economic Security as alleged herein constitute defamation.

56. Defendant negligently, if not knowingly and intentionally, responded to the Arizona Department of Economic Security by making false and defamatory statements concerning Ericka.

57. Defendant made these false and defamatory statements out of malice to ensure that Ericka would not obtain unemployment benefits.

58. Defendant's statements impeached Ericka's honesty, integrity, virtue, and reputation.

59. Defendant's statements caused damage to Ericka's reputation.

60. Defendant's statements called into question Ericka's lack of fitness for her trade, business, or profession.

61. Defendant's statements have caused damage to Ericka.

62. Ericka suffers from distress as she is fearful that Defendant will continue to make defamatory statements about her to potential employers that may choose to contact Defendant.

63. Upon information and belief, Defendant has defamed Ericka, by telling other individuals that Ericka was terminated due to unexcused absences.

64. Ericka's unemployment benefits application process took longer than normal because of Defendant's defamatory statements.

65. During that time, Ericka suffered distress as a direct result of Defendants statements because she had not yet received re-employment and was worried about her financial situation.

66. Based upon Defendant's tortious acts of defamation *per se*, Ericka is entitled to recover presumed damages, as well as general and special damages against Defendant.

67. Defendant either intended to injure Ericka or consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others, thereby entitling Ericka to an award of punitive damages.

68. Defendant's statements were not in good faith as Defendant knew them to be false or were made with reckless disregard for the truth and made them so that Ericka would be denied unemployment benefits.

69. Defendant acted intentionally and maliciously and/or Defendant acted to serve its own interests and having reason to know and consciously disregarding the substantial risk that its conduct might significantly injure the rights of Ericka and others, and consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Ericka. Defendant, therefore, should be liable to Ericka in the form of punitive or exemplary damage award under Arizona law.

## COUNT III

**WRONGFUL TERMINATION – PUBLIC POLICY EXCEPTION TO "AT WILL" RULE**

70. Ericka repeats and realleges each and every allegation as if fully set forth herein.

71. Defendant terminated Ericka in violation of public policy.

72. Defendant terminated Ericka for taking leave granted to her under the FMLA.

73. Ericka has been damaged as a direct and proximate Cause of Defendant's conduct.

74. Defendant acted intentionally and maliciously and/or Defendant acted to serve its own interests and having reason to know and consciously disregarding the substantial risk that its conduct might significantly injure the rights of Ericka and others, and consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Ericka. Defendant, therefore, should be liable to Ericka in the form of punitive or exemplary damage award under Arizona law.

## COUNT IV.

**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

75. Ericka repeats and realleges each and every allegation as if fully set forth herein.

76. Defendant was negligent; Defendant's negligence created an unreasonable risk of harm to Ericka; Defendant's negligence was a cause of emotional distress to

10

Ericka; her emotional distress resulted in injury and distress; Ericka has sustained and suffered damages.

## COUNT V.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Ericka repeats and realleges each and every allegation as if fully set forth herein.

78. Defendant's conduct about and toward Ericka was extreme and outrageous.

79. Defendant's conduct about and toward Ericka was either intentional or reckless.

80. Defendant's conduct about and toward Ericka caused her to suffer severe emotional distress.

81. Defendant acted intentionally and maliciously and/or Defendant acted to serve its own interests and having reason to know and consciously disregarding the substantial risk that its conduct might significantly injure the rights of Ericka and others, and consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Ericka.  Defendant, therefore, should be liable to Ericka in the form of punitive or exemplary damage award under Arizona law.

## COUNT VI.

## NEGLIGENCE – TRAINING, POLICIES, AND INVESTIGATION

11

82. Ericka repeats and realleges each and every allegation as if fully set forth herein.

83. Defendant owed a duty of due care and to act reasonably to Ericka and breached that duty in that it acted unreasonably and inappropriately and was negligent and careless (a) in firing Ericka in retaliation for her asserting her legal rights; (b) by failing to properly and reasonably investigate the concerns, complaints, and warnings Ericka brought to it in a fair, objective, impartial, and reasonable manner while remaining objective and open-minded; (c) by not properly training its personnel to conduct investigations in a reasonable and appropriate manner and to keep and preserve all material evidence used to support or justify an employee's discipline, including a firing or termination; (d) by not creating and following reasonable and appropriate written policies and procedures for its personnel to review, adhere to, and follow regarding and during an investigation of an employee concern, complaint, or warning; (e) by not properly supervising its management personnel; and (f) as alleged above.

84. As a direct and proximate result of such negligence and carelessness, Ericka has suffered and sustained damages, and will continue to suffer harms and losses in the future.

85. Defendant acted intentionally and maliciously and/or Defendant acted to serve its own interests and having reason to know and consciously disregarding the

substantial risk that its conduct might significantly injure the rights of Ericka and others, and consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Ericka. Defendant, therefore, should be liable to Ericka in the form of punitive or exemplary damage award under Arizona law.

**WHEREFORE, ERICKA PRAYS** that this court grant her a judgment against Defendant as follows:

A. For general damages in an amount deemed fair and reasonable by a jury, but in any event well in excess of the minimum jurisdictional limits of this Court;

B. For special damages in an amount to be proven at trial;

C. For all costs and attorney's fees incurred herein;

D. For exemplary or punitive damages;

E. For pre- and post-judgment interest to the extent provided by law; and

F. For such further relief as the Court deems just and proper.

## JURY DEMAND

Ericka hereby demands a trial by Jury.

DATED:  December 7, 2021                              **RANWICK & NOWICKI PLLC**

13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: */s/ Nicholas R. Nowicki*

Nicholas R. Nowicki
AZ Lic. # 029740
Ranwick & Nowicki PLLC
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: 612-217-0257
Telephone: 612-217-0257
Email: nik@ranwicknowickilaw.com

Attorney for Plaintiff,
Ericka Mendez